In The United States District Court

For The District of Idaho

U.S. COURTS

FEB 2 6 2015

Rcvd_____ Filed_____ Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

Michael S. Dill,  )

Plaintiff,  )

)

vs.  )

)

Christan Gpleck,  )

Scott Schaffer,  )

Jen Brenlee,  )

William Powson,  )

Peter Faletto,  )

Corizen, Inc.,  )

Jill Whittingly,  )

Keith Yordy,  )

Brent Renhie,  )

Butch Otter,  )

)

Defendants. x

Case No (To be assigned by court)

VERIFIED
COMPLAINT FOR
DAMAGES FOR 42 U.S.C § 1983

JURY TRIAL
DEMANDED

## I. Introduction

This is a civil rights action filed by Michael S. Dill a State Prisoner, for damages and injunctive relief under 42 U.S.C § 1983 alleging Denial of Medical Care, Deliberate Indifference, Denial of access to medical personal qualified to exercise judgment about a particular problem, failure to inquire into essential facts that are necessary to make

Verified Complaint Pg # 1

a professional judgment, Interference with Medical Judgment by factors unrelated to Plaintiff's needs, Failure to remedy unlawful conditions the Defendants know about and failure to carry out their responsiablities to make adequate medical care available in violation of the Eighth Amendment to The United States Constitution. Plaintiff also alleges the torts of Negligence and Malpractice.

## II. Jurisdiction

1. The Court has Jurisdiction over the Plaintiff's claims of violation of Federal Constitutional Rights under 42 U.S.C §§1331(1) and 1343 also 28 §1331 and §1332(a)(1)

2. The Court has Supplemental Jurisdiction over the Plaintiff's State tort claims under 28 U.S.C §1367.

~~3.~~ ~~[crossed out]~~

## III. Parties

3. Plaintiff, Michael S. Dill, was and is Incarcerated at Idaho State Correctional Institution ("I.S.C.I") during the events described in this complaint;

4. Defendant, Christan Goleck, Nurse Practicioner - he is sued in his individual capacity and was personally involved in the events as described in this Verified Complaint;

5. Defendant, Scott Schaffer, Nurse Practicioner - he is sued in his individual capacity and was personally involved in the events as described in this Verified Complaint;

6. Defendant, Jen Brewer, Registered Nurse - she is sued in

her individual capacity and was personally involved in the events as described in this Verified Complaint;

7. Defendant, William Poulson, Nurse Practicioner - he is sued in his individual capacity and was personally involved in the events as described in this Verified Complaint;

8. Defendant, Peter Faletto, Physical Therapist - he is sued in his individual capacity and was personally involved in the events as described in this Verified Complaint;

9. Defendant Corizen, Inc., is sued in their official capacity and are personally involved in the events as described in this Verified Complaint;

10. Defendant Keith Yordy - Warden, is sued in his individual and official capacity who was acting under color of State law during the events as described in this Verified Complaint

11. Defendant Brent Reinke - Director of Idaho Department of Corrections, is sued in his individual and official capacity who was acting under color of State law during the events as described in this Verified Complaint.

12. Defendant Jill Whittingly - Grievance Processing Coordinator, she is sued in her individual and official capacity she was personally involved in the events as described in this Verified Complaint acting under color of State law.

13. Defendant Govornor Butch Otter - Govornor of The State of Idaho, he is sued in his individual capacity acting under Color of State law during the events as described in this Verified Complaint.

## IV. Facts

14. On April 5th 2014, the Plaintiff during an exercise consisting of a thirteen (13.1) point-one mile run, experienced a severe and intense pain in the location of his left knee, which continued to cause him severe pain through the day and into the next day of April 6th, 2014. Plaintiff on the day of April 6th, 2014 assumed that his pain was associated with fatigue or overexertion, but became concerned when the pain intensified and became more painful.

15. On April 7th, 2014, Plaintiff filled out a Health Service Request Form ("HSR") a process in which the inmate submits his medical complaint/problem, and is to be triaged in the Medical Unit Referred to as "Building 20" at Idaho State Correctional Institution, by a qualified medical staff at sick-call.

16. Plaintiff was seen that day of April 7th, 2014 by Defendant Breeder, and was given muscle rub and an ice memo for 3 days and told Plaintiff to watch the call-out (a process by which an inmate is placed on a lists, days or even two to three weeks later to come down to "Building 20" to be seen by a qualified provider) to be seen by a provider.

17. On April 22nd, 2014 Plaintiff was placed on the call-out fifteen days (15) after his inital complaint to be seen by a provider in Building 20, Out-patient clinic room (Referred to as "OPC"). Upon arrival in OPC, Plaintiff was triaged, his weight taken, temputure taken, and blood pressure/pulse taken by Medical staff Jan Dietke, and was called into a seperate room to be seen by Defendant Scott Schaffer.

18. During the exam of Plaintiffs Knee Defendant Schaffer referred to Plaintiffs medical files to a past prior x-ray report taken

Verified Complaint pg #4

prior to the complied of injury

on November 30th, 2009. Defendant Shaffer told Plaintiff "your
knee looks to be fine". Defendant Shaffer than told Plaintiff "Nothing
can be done for the pain, we can try a steroid injection but that's
all I can do". Plaintiff asked Defendant Schaffer if it (the steroid
injection) would help with his severe pain and was told "Yes". Plaintiff
was told to stretch his knee by Defendant Schaffer and told that Plaintiff
would be placed on the call-out to recieve the injection, Defendant
Schaffer than concluded the visit and Plaintiff left Building 20.

19. On April 30th, 2014, Plaintiff was placed on the call-out to Return
to Building 20 to be seen in "OPC". (follow-up on knee) Upon arrival Plaintiff was called
into the back by Defendant Schaffer. Defendant Shaffer
informed Plaintiff to sit in a chair, lift his pants leg up above the
knee, and to relax. He told Plaintiff that he would be inserting
a needle into the joint of his knee, and would first attempt to
drain fluid off the knee. At this point Defendant Shaffer
than inserted a needle into the Plaintiffs knee joint, removing
a yellowish/clear liquid from Plaintiffs left knee in question.
Defendant Schaffer then told Plaintiff "This color of fluid is
good, no infection". Defendant, then switched syringes and begun
to distribute the Steroid Injection into his knee. When
Defendant Schaffer was finished with the Injection he gave
the Plaintiff instructions to Return to Building 20 if the pain
increased or swelling began, and to stay off his feet the rest
of the day to let the Steroid set into the joint. No anistetic
was given for the procedure and the set of instructions given
to Plaintiff was the only source of after-care given.

20. On May 6th 2014 Plaintiff returned to Building 20 to fill

Verified Complaint Pg #5

out a second subsequent "HSR" so that he could be seen in sick-call, about on-going severe pain which became worse after a Sterical Injection into his left knee, per providers after-care instructions.

21. Plaintiff's "HSR" was recieved by Defendant Brenlee, who took Plaintiff's "HSR", stamped said "HSR" with intake info, and told Plaintiff "Watch the call-out, to be seen by a provider". Plaintiff then asked Defendant Brenlee "why he always had to wait so long to be seen when he is in such severe pain and can barely stand on his leg, after the provider advised him to Return if the pain got worse"? Defendant Brenlee replied to Plaintiff "It's not an emergancy, you will just have to wait". Plaintiff then left Building 20 and Returned to Unit 10 and verbally complained to Officer Ellis, and Corporal Biedett.

22. The same day of May 6th, 2014 Plaintiff loged a Offender Concern Form Refereed to a ("Kite"), to Defendant Gordy, indicating through this channel of communication the issues presenting themselves through the Medical Vendor Corizen, Inc, and himself, on why as Warden of Idaho State Correctional Institution he was allowing this Medical Vendor to deviate from its contractural obligations set Forth by the State, and in it's Request For Proposal on the Vendors duties to Provide Medical Care to the Inmates at Idaho State Correctional Institution.

23. Defendant Gordy avoided this question entirley by his Response to Plaintiffs Offender Concern Form by stating the Plaintiff

Verified Complaint Pg#6

was asking Medical Questions to which he is not qualified to do, and to intervene as the Facility Head at the First Step is not appropiate. Defendant Gordy did not address Plaintiff's concerns of Defendant Corizon Inc, being allowed to deviate from its contractued obligations set forth By the State, and to be monitored and be held accountable for any violations of said Contracts, by the Facility Head namely Defendant Gordy.

24. Plaintiff filed a grievance to Defendant Gordy's concern form regarding the issue on May 13th, 2014.

25. On May 14th, 2014 Plaintiff had still not been seen by a medical professional regarding the severe pain in his left knee, so Plaintiff filled out a third subsequent "HSR" to be seen. When Plaintiff handed his "HSR" into Defendant Brewer, she informed Plaintiff again to continue watching the call-out to be seen by a provider, that his issue was not an emergancy and that there are 1,700 (seventeen-hundred) inmates at Idaho State Correctional Institution and only a few providers "they'll get to you when they have time". Plaintiff again left the Medical Unit without being evaluated or provided any form of medical care or attention.

26. On May 6th, 2014 Plaintiff wrote a "Kite" to the "Health Service Administrator" name unknown. The "Kite" was returned to Plaintiff May 8th, 2014 stating that my knee pain was not an emergency and that Defendant Brewer seen Plaintiff on 4/07/14 in sick-call, the response did not acknowledge the fact that Defendant Brewer did not see Plaintiff on the day of May 6th, 2014 to evaluate Plaintiff's complaints of his severe knee pain or to take his

Verified Complaint Pg #7

vitals or any other necessary test in order to make a professional medical judgement regarding Plaintiff's complaint of severe pain. On May 13th, 2014 Plaintiff filed a grievance to Defendant Jill Whitingly regarding that issue.

27. On May 20th, 2014 Plaintiff was placed on the call-out to be seen in the Medical Unit in Out-Patient Clinic by Defendant Shaffer, again during this visit Defendant Shaffer referred to Plaintiff's x-ray dated on November 30th, 2009 and informed Plaintiff he has Osgood Slaughter Dieases (spelling unknown), Defendant then gave Plaintiff a neo-prene brace and a list of Exercises to perform. When Plaintiff asked Defendant Shaffer what could be done to decrease or help him with his severe pain, Defendant Shaffers response was "Nothing".

28. On May 21st, 2014 Plaintiff filed a form called "Balla Class Member Authorization To Discuss Personal Health Information with Offender Pete Venstra describing Plaintiff's severe knee pain and information on how nothing was being done to help Plaintiff with this Pain. The Response Plaintiff was given was "On 5/20/14 HEP, Knee Brace + F/U if pain persist. Thus, submit "HSR" for continued knee pain."

29. On June 1st, 2014 Plaintiff filed a fourth subsequent "HSR" in the Medical Unit to be seen by sick call, on this day Defendant Brenner was not there, and Plaintiff was admitted into sick-call to be seen by an unknown female employee who gave Plaintiff Ibupeofen, Tynol and a wrap for his knee. Plaintiff explained that his knee brace had been stolen after sending it into Laundry to be washed, but the brace was doing nothing to help him with

Verfied Complaint Pg #8

his severe pain, and that his pain was becoming worse. Plaintiff was told to watch the call-out to be seen by a provider, and was made to leave the Medical Building to return to his housing location.

30. On June 16th, 2014 Plaintiff has still not been seen by a doctor, or provider qualified to diagnose or examine him and as such filled out a fifth subsequent "HSR", again Defendant Brewer told Plaintiff "be patient you will be seen, but not today", and was sent back to his housing location again without being seen by anybody.

31. On June 18th, 2014 Plaintiff was placed on the call-out to see a provider in the Medical Unit about his on-going complaint of severe pain in his left knee by Defendant William Poulson N.P. whom examinmed Plaintiff's Medical Chart, again Referring to Plaintiffs X-ray report taken November 30th, 2009, five (5) years previously and told Plaintiff "you have Osgood Slaughters Dieases (spelling unknown)". Defendant Poulson gave Plaintiff some Ibuprofen, a new knee brace, and scheduled Plaintiff to be seen by a Physical Therepisist.

32. On Tuesday, June 24th, 2014 at 3:00 p.m Plaintiff was placed on the call-out to see Physical Therepisist Defendant Peter Faletto in the Medical Unit, while waiting to see Defendant in the lobby; Defendant Faletto appeared to Plaintiff and informed Plaintiff "they usually dont schedule me so late, I will place you on the call-out to be seen Thursday, June 26th, 2014."

33. On Thursday June 26th, 2014 Plaintiff was not placed on the call-out to be seen in the Medical Unit as Defendant Faletto had told Plaintiff he would be doing, in fact Plaintiff

Verified Complaint Pg #9

was not seen by any medical personal on this day.

34. On June 30th, 2014 Plaintiff was placed on call-out to be seen by Defendant Faletto in the Medical Unit to begin his Physical Therapy for his injured Knee and associated severe pain. At this time Plaintiff told Defendant Faletto how Defendants Shaffer and Poulson told him how he had Osgood Slaughters Diease (spelling unknown). Defendant Faletto at this time disagreed with Defendants Shaffer and Poulson's diagnoses and explained that at Plaintiff's age at that time (32) he would not now just be experiencing the symptoms of this dieases because it is a diease infants get associated with growing/development problems, and causes issues their whole life; whereas Plaintiff is not an infant and issues are now just presenting itself upon Plaintiff. Defendant Faletto looked at Plaintiff's x-ray report from November 30th, 2009 and had Plaintiff perform a series of exercises, and afterwards told Plaintiff to watch the call-out to be seen next week and was allowed to return to his housing unit.

35. On July 3rd, 2014 Plaintiff was placed on call-out to again be seen by Defendant Faletto for Physical Therepy. While in the Medical Unit Defendant Faletto informed Plaintiff he would be doing something which he called "cold core therepy" which consisted of a blood pressure cuff and a circulation system used to distribute cold water over the arm that the pressure cuff is attached to. Defendant Faletto told Plaintiff during this "cold core therepy" that "You will sleep better than you've slept in months" and "by lowering your bodies core tempature your Knee pain will be lessened". This "cold core therepy" lasted

Verfied Complaint PG #10

one hour, after which Plaintiff returned to his housing unit.

36. That same night Plaintiff did not sleep as Defendant Faletto had told him, and the pain in Plaintiffs knee was not lessened as Defendant Faletto had told him.

37. On July 8th, 2014 Plaintiff was placed on call-out to be seen in the Medical Unit by Defendant Faletto, again. Plaintiff was asked how he slept, to which he told Defendant terribly, he told Defendant Faletto the "cold core therapy" did not lessen the pain in his knee at all, to which Defendant Faletto responded "Oh, Well it works differently for everybody." At this point Defendant had Plaintiff do some exercises for his knee for about 10 minutes, and followed by "cold core therapy" yet again for half an hour, and was sent back to his housing unit afterwards.

38. On July 10th, 2014 Plaintiff was placed on the call-out to be seen again by Defendant Faletto. The Defendant had Plaintiff do exercises for his knee followed by a vibriating platform in which Plaintiff was made to stand on. This platform caused Plaintiff even more intense severe pain and stated this to the Defendant. Defendant had Plaintiff do this for about half an hour and later told that he would have Plaintiff seen by a Provider to assess his knee on a follow-up. Said follow-up never happened.

39. On August 27th, 2014 filled out a sixth subsequent "HSR" to be seen regarding his on-going severe pain in his left knee to which a follow-up from Physical Therapy was to take place but never did, Plaintiff was again told to watch call-out and was sent back to his housing unit without any form of relief for his

Verified Complaint Pg # 11

severe pain.

40. On September 10th, 2014 Plaintiff filled out a second "Balla Class Member Authorization To Discuss Personal Health Information" with Offender Barry Senay #27413 aguring that the x-ray being used was five (5) years old and unreliable, and that nothing was being done to help Plaintiff with the severe pain in his Knee.

41. The next day September 11th, 2014 Plaintiff was placed on the call-out to be seen by Defendant Christian Goleck. At this time an x-ray was ordered of Plaintiff's left Knee after five (5) months of relying on an x-ray five (5) years old and unreliable. During this visit with Defendant Goleck, the Defendant continued to tell Plaintiff "nothing is different he is sure of, nothing can be done for your pain you will live with the pain the rest of your life its just something you will have to deal with". He told Plaintiff that it was in fact Osgood Slaughter's Diease (spelling unknown), and told Plaintiff he could return to his housing unit.

42. On September 15th, 2014 at 8:45 A.m Plaintiff was called down to the Medical Unit to have an x-ray imaging done of his left Knee, once done Plaintiff returned to his housing unit.

43. On September 26th, 2014 Plaintiff was placed on the call-out to be seen by Defendant Goleck regarding his September 15th, 2014 x-ray report. Defendant Goleck told Plaintiff he had some "loose bodies" that float within the Knee, and may cause pain, but its nothing he can do anything for. When Plaintiff asked Defendant Goleck about recieving an "MRI" to see

Verified Complaint Pg #12

soft tissue damage Defendant told Plaintiff "I'll be honest with you I'm trying to save some tax-payee dollars and an "MRI" is extremly expansive, if I put in to the Doctor requesting an "MRI" hes gonna deny the request based just off that, at this point Plaintiff told Defendant "thats a bunch of Bullshit", at which point Defendant Goleck ended the conversation and sent Plaintiff to his housing unit.

44. On May 13th, 2014 Plaintiff filed a Grievance against the Health Service Administrator, and on June 4th, 2014 Defendant Whittington Returned said Grievance unprocessed stating "The issue was previously greived under greievance number : II 140000600". In this greievance Plaintiff filed a Kite on Defendant Breeder on May 6th, 2014, greived the issue on May 15th, 2014, and appealed the decision on June 16th, 2014.

45. On June 3rd, 2014 Defendant Whittington returned Plaintiffs greivance to Defendant Warden Goedy un-processed stating "You did not include with the greivance an answered or signed Offendee Concern Form(s) that shows your attempts to resolve the issue informally with applicable staff", assuming Plaintiff did not address his concerns to the right person which he did do. Plaintiff then appealed that decision on June 4th, 2014, yet again the Appeal was returned to Plaintiff from Defendant Whittington on June 16th, 2014 stating "Appeal not processed, you did not attempt to resolve the issue with the appropiate staff".

46. On August 5th, 2014 Plaintiff filed a greivance against Defendant Corizen Inc; and all providees, and on August 22nd, 2014 Defendant Whittington returned that greivance unprocessed

stating "The issue was previously grieved under grievance number: II 140000600.

47. On August 25th, 2014 Plaintiff filed a Concern against Defendant Whittington asking her to explaine why she picks and chooses which concerns to process or not process. Her response to Plaintiff "I process grievances per SOP 316020100I."

48. On September 30th, 2014 Plaintiff filed a Kite to Defendant Gelok asking him about his comment on saving tax-payer dollars his Response back to Plaintiff avoided answering this concern to his question.

49. On October 13th, 2014 Plaintiff filed his grievance to the September 30th, 2014 Kite to Defendant Gelok on October 27th, 2014 Plaintiff's grievance was denied.

50. On October 28th, 2014 Plaintiff filed his Appeal to the October 13th, and September 30th, 2014 complaint to Defendant Gelok, and on November 20th, 2014 that appeal was seen and noted that "loose bodies" were in fact present yet was denied as well.

51. Plaintiff continues to suffer severe pain in his left Knee, additionally Plaintiff has not had any procedure done to remove these "loose bodies" in said Knee. Plaintiff continues to suffer daily due to the severe pain Plaintiff can no longer enjoy physical exercise or perform simple tasks such as bending, Kneeling, squatting, or sitting without experiencing severe pain. Plaintiff to date has not been seen by a Medical Doctor.

## V. Claims For Relief

52. Defendants Yordy, Renkier, and Ottor have been placed on notice of the Constitutional Violations of the Eighth Amendment

conduct of Defendants Corizen Inc., Gelok, Powson, Shaffee, Brewer, and Faletto by a number of complaints, grievances, and letters/telephone complaints over a period of many months and years, but they have failed to take disciplinary action against them or otherwise control their behavior.

53. The failure of Defendants Yordy, Renkie, Ottee, and Corizen Inc., to take disciplinary or other action to curb the known unlawful conditions they know about, and failure to carry out their responsiblities to make adequate medical care available constitutes Deliberate Indifference Under the Eighth Amendment to the United States Constitution.

54. The actions of Defendants Gelok, Shaffee, Brewer, Powson, and Faletto for circumventing, and denying as a gatekeeper role access to medical personal qualified to exercise judgment about a particular problem such as Plaintiffs severe knee pain, and to take certain steps in order to ensure Plaintiff was seen by a Medical professional qualified to make a medical diagnoses of Plaintiffs injury, and failure to inquire into essential facts that are necessary to make a professional judgment when Defendants relied on an x-ray previously taken five (5) years prior to make their current medical judgments, constitutes Deliberate Indifference under the Eighth Amendment to the United States Constitution.

55. The actions of Defendant Corizen Inc., by establishing an unwritten policy to deny inmates an "MRI" based soley on the cost of said test rather than a medicall necessity constitutes Interference with Medical Judgement by factors unrelated to prisoners needs in violation of the Eighth Amendment to the United States Constitution.

Verified Complaint pg #15

56. The actions of Defendant Whittingly denying to process Plaintiff's grievances to appropriate authorities in a manner as to circumvent accountability on Administrative level, namely Defendants, Yordy, Renkie, and Corizen Inc., denies Plaintiff's First Amendment Right to Petition the Goverment for a redress of grievances.

57. Failure of Defendants Goleck, Shaffee, Brewer, Poulson, and Faletto to take steps necessary to acquire a current up-to-date x-ray of Plaintiff's knee for five (5) months so that a qualified medical professional, had one been sought obtain an accurate and professional medical diagnoses, constitutes the tort of Negligence under the law of Idaho.

## VI. Relief Requested

58. A. Issue an injunction ordering Defendants Corizen Inc., Goleck, Poulson, Brewer, Shaffee, Faletto, Yordy or their agents to:

1. Immediately arrange for the Plaintiff to be evalated by a medical practicioner with the expertise in the treatment of knee injuries, and associated pain.

2. Immediately arrange for the Plaintiff to have an "MRI" imaging done by a medical Practicioner qualifies to perform and or read such imaging to assist Medical practicioner with the expertise in the treatment of knee injuries, and associated pain to clearly see the exact extent of the injury

3. Carry out without delay the treatment directed by such medical practicioner with the expertise of knee injuries, and associated pain

Verified Complaint Pg# 16

59. B. Award Compensatory damages in the following jointly and severally against

1. Defendants Golock, Shaffer, Brewer, Poulson, and Faletto for the unnecessary Wanton infliction of pain resulting from their failure to provide adequate Medical Care to the Plaintiff, and the continuing severe pain Plaintiff lives with daily, award jointly and severally $50,000.00

2. Defendants Yordy, Renkie, Otter, and Corizen Inc., for their failure to carry out their responsibilities to make adequate medical care available to Plaintiff, and to curb the known unlawful conditions related to adequate Medical Care, and Constitutional Violations within Idaho State Correctional Institution, and within the Department of Correction Facilities managed by Corizen Inc., Resulting in Plaintiffs's Constitutional Rights being, and continuing to be Violated, and the continuing deprevation of medical needs, and the continuing severe pain Plaintiff lives with daily, award jointly and severally $150,000.00.

3. Defendant Corizen, Inc., for its inappropriately policy to deny "MRI's" to the prisoner population based on cost rather than the medical needs of such test Resulting in the continuing severe pain in Plaintiffs's knee, and non-diagnosis of a severe medical issue by a qualified medical professional qualified to make such Diagnoses, award $100,000.00

4. Defendant Whittingly for the denial to process Plaintiffs grievances to appropriate Administrative Defendants in—

Verified Complaint Pg #17

Violation of Plaintiff's First Amendment Rights to Petition the Goverment for a redress of grievances, amount $10,000.00

60. C. Award Punitive Damages in the following amounts:

1. $20,000.00 each against Defendants Goleck, Poulson, Faletto, Bremer, Shaffee.

2. $50,000.00 each against Defendants Yordy, Henkie, and Otte.

3. $150,000.00 against Defendant Corizen Inc.,

4. $10,000.00 against Defendant Whitingly

61. D. Grant such other relief as it may appear that Plaintiff is entitled.

62. The Plaintiff has exhausted his administrative remedies with respect to all claims and defendants.

63. I declare under penalty of perjury, that I am the Plaintiff in this action, that I have read the complaint, and that the information contained in the complaint is true and correct. 28 U.S.C. §1746; 18 U.S.C. §1621.

Executed at :
On (date) :

_____
plaintiff's signature

**JURAT**

State of Idaho
County of Ada

Subscribed and sworn/affirmed before me this
24 day of Febuary, 2015.

_____
Alan Stewart - Notary Public

My Commission Expires: 08/16/2020

Verified Complaint Pg #18